# Requirement That "Private Citizens" Be Appointed From "Private Life" to the National Council for the Humanities

Because state and local public officials, including a county commissioner, are not "private citizens" who would be appointed "from private life" within the ordinary meaning of those terms in 20 U.S.C. § 957(b), such officials are disqualified from appointment to the National Council for the Humanities.

August 27, 2004

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

You have asked for our opinion whether the statutory requirement that members of the National Council for the Humanities ("NCH") be appointed "from private life" and "selected from among private citizens of the United States," 20 U.S.C. § 957(b) (2000), bars appointment of a state or local government official. We understand, in particular, that this question concerns the possible appointment of a part-time county commissioner. We conclude that because state and local public officials, including a county commissioner, are not "private citizens" who would be appointed "from private life" within the ordinary meaning of those terms, such officials are disqualified from appointment to the NCH under section 957(b).

The statute authorizing the President to appoint members of the NCH provides:

> The Council shall be composed of the Chairperson of the National Endowment for the Humanities, who shall be the Chairperson of the Council, and twenty-six other members appointed by the President, by and with the advice and consent of the Senate, *from private life*. Such members shall be individuals who (1) are *selected from among private citizens of the United States* who are recognized for their broad knowledge of, expertise in, or commitment to the humanities, and (2) have established records of distinguished service and scholarship or creativity and in a manner which will provide a comprehensive representation of the views of scholars and professional practitioners in the humanities and of the public throughout the United States.

*Id.* § 957(b) (emphases added).[1]

---

[1] The National Endowment for the Humanities ("NEH") was created in 1965 to promote scholarly, educational, and public projects in the humanities. *See* 20 U.S.C. §§ 956–958. The NEH is headed by the Chairperson of the Endowment, who is authorized to enter into contracts, issue grants and loans, and make other arrangements consistent with advancing the humanities. *Id.* § 956(b)–(c). The Chairperson is advised by the NCH, which consists of 26 members appointed to staggered six-year terms. *Id.*

The requirement that NCH members be selected from "private life" and from among the "private citizens of the United States" generally disqualifies all government officials, whether federal, state, or local, from appointment to the NCH. The plain meaning of the statute, particularly the phrase "private citizens," governs the question at issue. The word "private" is derived from the Latin *prīvātus*, meaning "apart from the state, deprived of office." *Webster's Third Int'l Dictionary of the English Language* 1804 (2002). According to its ordinary definition and usage, the adjective "private," specifically when used in the phrase "private citizen," means "not invested with or engaged in public office or employment (a ~ citizen)." *Id.* at 1805. *See also Funk & Wagnall's Standard College Dictionary* 1072 (1969) ("Having no official rank, character, office, etc.: a private citizen"); *American Heritage Dictionary of the English Language* 1442 (1992) ("Not holding an official or public position"); *Random House Dictionary of the English Language* 1540 (2d ed. 1987) ("not holding public office or employment: *private citizens*"). The word "private" has similar meaning when used in the phrase "private life." *See id.* ("not of an official or public character: *private life*"). These phrases, by their plain terms, exclude all persons who hold public office.

Consistent with this plain meaning, this Office has interpreted similar statutes that require appointment "from private life" to preclude appointment of persons who hold government office, whether federal or state, at the time of the appointment.[2] *See* Memorandum for Dudley H. Chapman, Associate Counsel to the President, from Leon Ulman, Acting Assistant Attorney General, Office of Legal Counsel, *Re: The Status of Members of the Board of Trustees of the Woodrow*

---

§ 957(b)–(c). The NCH advises generally on matters relating to the Endowment's mission, and the Chairperson is required to seek the recommendation of the NCH on any application for funding that exceeds $30,000. *Id.* § 957(f). The recommendation of the NCH does not bind the Chairperson, however; the Council is advisory only. *Id.* Because the NCH is strictly advisory, members of the NCH are not "Officers of the United States" for purposes of the Appointments Clause, and thus the qualifications on NCH appointments set forth in section 957(b) do not violate the Constitution. *See The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 144 (1996); *Common Legislative Encroachments on Executive Branch Authority*, 13 Op. O.L.C. 248, 249 (1989).

[2] Similar appointment requirements are found in a number of other federal statutes. For statutes requiring appointment of "private citizens," see 12 U.S.C. § 4703(d) (2000) (Community Development Advisory Board); 16 U.S.C. § 19f (2000) (National Park Foundation Board); 42 U.S.C. § 4273(a)(1) (2000) (Advisory Commission on Intergovernmental Relations); 20 U.S.C. § 955(b)(C)(i) (2000) (National Council on the Arts). For statutes requiring appointment "from private life," see 2 U.S.C. § 352(1) (2000) (Citizens' Commission on Public Service and Compensation); 12 U.S.C. § 2402(a)(13) (2000) (National Commission on Electronic Fund Transfers); 20 U.S.C. § 80f(b)(9) (2000) (Board of Trustees for the Woodrow Wilson International Center for Scholars); 20 U.S.C. § 2103(b)(1)(B) (2000) (Board of Trustees for the American Folklife Center); 22 U.S.C. § 290f(g) (2000) (Board of Trustees for the Inter-American Foundation); 22 U.S.C. § 290h-5(a)(1) (2000) (Board of Directors for the African Development Foundation); 29 U.S.C. § 656(b) (2000) (National Advisory Committee on Occupational Safety and Health). The courts have not construed these appointment provisions, and we are not aware of relevant case law interpreting the phrases "public citizen" or "public life" in a manner inconsistent with our analysis.

*Wilson International Center for Scholars* (June 27, 1975) (opining that members may remain on the board of the Wilson Center after becoming public officials but may not hold public office at the time of their appointment); Memorandum for the Deputy Attorney General from W. Wilson White, Assistant Attorney General, Office of Legal Counsel, *Re: H.R. 1131, Commission on Voter Participation in Federal Elections* (June 20, 1957) (pointing out that a requirement in proposed legislation (never enacted into law) that certain commission members be state or local government representatives would be inconsistent with language in the same bill prescribing appointment "from private life"). We also note that in other contexts, we have acknowledged a distinction between "private citizens" and state government officials. *See, e.g.*, *Common Legislative Encroachments On Executive Branch Authority*, 13 Op. O.L.C. 248, 250 (1989) (listing "private citizens" separate from "state officials"); *Delegation of Authority to State Governors in End-user Gasoline Allocation Program*, 3 Op. O.L.C. 231, 232 (1979) (discussing "State officers" separate from "private citizens").

In prescribing generally that NCH members be appointed "from private life" and "from among private citizens," Congress did not intend, in our view, to distinguish federal government officials, on the one hand, from state and local government officials, on the other. Congress has used specific language when it intends to disqualify only federal officials from appointment to particular offices. *See, e.g.*, 42 U.S.C. § 242m(b)(2)(C) (2000) (requiring that members of peer review groups advising the Secretary of Health and Human Services be appointed "from among persons who are not officers or employees of the United States"). *See also* 42 U.S.C. § 289a-1(b)(5)(C) (2000) (Ethics Advisory Boards for the National Research Institute); 42 U.S.C. § 5616(a)(2)(A) (2000) (Coordinating Council on Juvenile Justice and Delinquency Prevention); 49 U.S.C. § 30306(c)(1) (2000) (National Driver Register Advisory Committee); 50 U.S.C. app. § 1989b-5(c)(1) (2000) (Civil Liberties Public Education Fund Board of Directors). These examples of other statutes specifically precluding appointment of federal officials reinforce the plain meaning of section 957(b); language requiring appointees to be "private citizens" selected "from private life" is deliberately broader than a proscription against appointment of federal officials.[3]

We are informed that in at least one instance a state official was appointed to a similar body, the National Council for the Arts ("NCA"). As with the NCH, NCA

---

[3] We are aware of an instance in which some members of Congress, in legislative history, appeared to equate the phrase "not Federal officers or employees" with "private-life members." *See* H.R. Conf. Rep. No. 105-599, at 197 (1998) (describing statutory membership requirements for the Internal Revenue Service Oversight Board, codified at 26 U.S.C. § 7802 (2000)). But in that instance the terms "private life" and "private citizen" did not appear in the statute, which specifically prescribed only that members of the IRS Oversight Board be "individuals who are not otherwise Federal officers or employees." 26 U.S.C. § 7802(b)(1)(A). That statutory language supports our view that Congress would use more specific language if it intended to bar only federal officials from appointment to the NCH.

appointees must be "private citizens." 20 U.S.C. § 955(b)(C)(i) (2000). We understand that, in 1989, a state senator from New York was appointed to the NCA. This Office evidently did not opine on that appointment. We do not believe that this single appointment constitutes a history and practice that may overcome the plain meaning of the statutory text governing appointments to the NCH. *See Nat'l Fed'n of Fed. Emps., Local 1309 v. Dep't of Interior*, 526 U.S. 86, 95–96 (1999) ("[A] single, unreviewed decision [based on an executive order that preceded the statute] does not demonstrate the kind of historical practice that one might assume would be reflected in the Statute.").

Nor do we believe the statutory text could bear a distinction between state officials, on the one hand, and local government officials, such as a county commissioner. One who holds or is invested with a public office, whether part of state or local government, is not a "private citizen" or in "private life" within the ordinary sense of those terms. Congress appears to have recognized this ordinary distinction between private citizens and local officials in statutory language: "[the Director may appoint] one or more advisory committees composed of such *private citizens and* officials of Federal, State, *and local governments*." 42 U.S.C. § 285a-2(b)(7) (2000) (National Cancer Institute Advisory Committee) (emphases added). *See also* 49 U.S.C. § 1113(b)(1)(E) (2000) (Advisory Committees to the National Transportation Safety Board must be "composed of qualified private citizens and officials of the Government and State and local governments"). Again, the inference from these examples is clear: "private citizens" are distinguished from local government officials.

In one instance, under a different statute, we did conclude that a municipal employee could be appointed to a position reserved for those from "private life." Memorandum for the Vice President from Nicholas deB. Katzenbach, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment to the United States Citizens Commission on NATO* (Mar. 1, 1961). That opinion addressed an appointment to the United States Citizens Commission on NATO ("NATO Commission"), a two-year advisory commission intended to meet with citizens in other NATO countries to facilitate greater cooperation and unity of purpose within NATO. *See* Pub. L. No. 86-719, 74 Stat. 818 (1960). As with the NCH, appointees to the NATO Commission were to be appointed from "private life." *Id.* In that opinion, we relied solely on the legislative history of the provision, which indicated that Congress wanted only to insure that appointees to the NATO Commission were not connected with the foreign policy of the United States. Specifically, Congress desired an objective perspective on foreign policy and went so far as to vest the authority to make appointments to the NATO Commission in Congress, not in the President. Based on that unique legislative history, we concluded that a Chicago municipal employee—who obviously had no prior connection with the foreign policy of the United States—qualified for appointment to that particular commission.

Legislative history, of course, cannot trump the clear words of a statute, and we question the continued validity of our 1961 opinion for that reason. In any event, here, by contrast, there is no such legislative history indicating that Congress was specifically concerned to ensure only that appointees to the NCH be unaffiliated with the federal government, as distinct from local government. Indeed, there is no relevant legislative history at all on the "private life" and "private citizen" appointment requirement for NCH. To the extent the legislative history discusses the appointment requirements of section 957(b), it is only to emphasize the other criteria set forth in section 957(b)—that NCH appointees should broadly represent the humanities and be individuals of distinction in and commitment to the humanities. *See* S. Rep. No. 91-879, at 3 (1970). *See also* 20 U.S.C. § 957(b) (NCH appointees must be "recognized for their broad knowledge of, expertise in, or commitment to the humanities," "have established records of distinguished service," and "provide a comprehensive representation of the views of scholars and professional practitioners in the humanities"). The fact that only private citizens may be appointed suggests that Congress was seeking more than just expertise from the NCH; it specifically wanted the NCH appointees to be non-governmental.

We believe the same conclusion holds when the local government official exercises his or her duties on a part-time basis only, even if the public official also holds a full-time private job. The dictionary definition of "private citizen" reinforces this view: a person is a private citizen if he or she does not hold a public office and is not engaged in public employment. *Webster's Third Int'l Dictionary* at 1805. A person who holds such an office, whether full-time or part-time, is not a private citizen. The definition indicates that whether persons are public officials turns on the nature of their position, not the number of hours occupied in their official duties. Many important government officials are or have been part-time. Indeed, the first twenty-three Attorneys General of the United States were part-time and continued to represent private clients. *See* Luther A. Huston, *The Department of Justice* 11 (1967). Nonetheless, even a part-time Attorney General surely would not be classified as a private citizen. According to the National Conference of State Legislatures, only eleven states have legislatures whose public duties occupy eighty percent or more of the time equivalent of a full-time job. *National Conference of State Legislatures*, *available at* http://www.ncsl.org/ programs/legman/about/partfulllegis.htm (last visited Aug. 26, 2004). Whether full-time or part-time, legislators are elected officials who exercise lawmaking powers and are clearly public officials disqualified from appointment to the NCH. If part-time officials could be considered private citizens, then numerous local government officials, including county commissioners, state legislators, state and local judges, and city council members, would have to be deemed private citizens.[4] We

---

[4] The average city council member spends only 22 hours per week on council-related duties. National League of Cities, *Serving on City Councils: America's City Councils in Profile (Part II)*, at 2–3 (2003),

think that in light of the considerable governmental powers exercised by such officials, they cannot be deemed private citizens consistent with the ordinary usage of that term. We therefore conclude that local government officials who exercise lawmaking or policymaking powers pursuant to their office cannot be considered private citizens regardless of whether they are full-time or part-time.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

*available at* http://www.nlc.org/nlc_org/site/files/pdf/council_brief2.pdf (last visited Aug. 26, 2004). Most county commissioners are part-time. National Association of Counties, *What Do County Commissioners Do All Day?* at 3, *available at* http://www.naco.org/ContentManagement/ContentDisplay.cfm?Content ID=12026 (last visited Aug. 26, 2004). Part-time local judges are sufficiently common that the ABA Model Code of Judicial Conduct distinguishes ethical rules for part-time versus full-time judges. *See Model Code of Judicial Conduct Application* §§ C–E (1990).